UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALISSA S.,

               Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

**DECISION AND ORDER**

1:21-CV-01097 EAW


## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Alissa S. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 9; Dkt. 11) and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed her application for DIB on March 25, 2019.  (Dkt. 4 at 26, 118).[1]  In her application, Plaintiff alleged disability beginning November 30, 2018.  (*Id.* at 18, 228).  Plaintiff's application was initially denied on June 26, 2019, and on reconsideration on January 13, 2020.  (*Id.* at 26, 122-27, 130-35).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Kenneth Theurer on July 30, 2020.  (*Id.* at 44-86, 137-59).  On November 25, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 23-43).  Plaintiff requested Appeals Council review; her request was denied on August 2, 2021, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-11).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the

claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained

basis, notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC

permits the claimant to perform the requirements of his or her past relevant work. *Id*.

§ 404.1520(f).  If the claimant can perform such requirements, then he or she is not

disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the

burden shifts to the Commissioner to show that the claimant is not disabled. *Id*.

§ 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the

claimant "retains a residual functional capacity to perform alternative substantial gainful

work which exists in the national economy" in light of the claimant's age, education, and

work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted);

*see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

I. **The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step

sequential evaluation set forth in 20 C.F.R. § 404.1520.  Initially, the ALJ determined that

Plaintiff last met the insured status requirements of the Act on June 30, 2020.  (Dkt. 4 at

28).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

work activity from November 30, 2018, the alleged onset date, through June 30, 2020, the date last insured.  (*Id.* at 29).

At step two, the ALJ found that, through the date last insured, Plaintiff suffered from the severe impairments of: "disorder of the hip, degenerative disc disease of the cervical spine, sciatica, migraine headaches, anxiety, and depression."  (*Id.*).  The ALJ also found that Plaintiff suffered from the non-severe impairments of hearing loss and obesity.  (*Id.*).

At step three, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.* at 29-31).  In particular, the ALJ considered the requirements of Listings 1.02, 1.04, 11.02, 12.04, and 12.06 in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that, through the date last insured, Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [Plaintiff] can occasionally lift and carry ten pounds, sit for approximately six hours, stand or walk for approximately two hours in [an] eight hour day with normal breaks; occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling.  She should avoid work at unprotected heights or in conjunction with dangerous machinery.  She can tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations, 1993 Edition; should avoid work outdoors in bright sunshine and work with bright or flickering lights such as would be experience[d] in welding or cutting metals.  Work is limited to simple, routine, and repetitive tasks in a work environment involving only simple, work-related decisions; with few, if any, work place changes.

(*Id.* at 31-32).  At step four, the ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work.  (*Id.* at 37).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform through the date last insured, including the representative occupations of document preparation clerk, surveillance system monitor, and election clerk.  (*Id.* at 37-38).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act from the alleged onset date through the date last insured.  (*Id.* at 38).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse the Commissioner's decision and remand for further proceedings, arguing that the ALJ failed to properly evaluate the opinion of Dr. Subodh Debnath.  (Dkt. 10 at 3).  The Court is not persuaded by this argument, for the reasons discussed below.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017).  Because Plaintiff's claim was filed on December 21, 2017, the new regulations, codified at 20 C.F.R. § 404.1520c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

sources." 20 C.F.R. § 404.1520c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id.* Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* at § 404.1520c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 404.1520c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 404.1520c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at

§ 404.1520c(b).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions."  *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.  20 C.F.R. § 404.1520c(b)(2).  The ALJ may—but is not required to—explain how she considered the remaining factors.  *Id.*

Here, the ALJ gave Dr. Debnath's opinion thorough consideration.  The ALJ explained that he was "less persuaded" by Dr. Debnath's opinion than by the other opinions of record because Dr. Debnath "failed to provide any objective findings to support the degree of restrictions he identified" and because his "opinion is contradicted by his own treatment records."  (Dkt. 4 at 33).  The ALJ went on to describe in detail the specific clinical findings and imaging results that undercut Dr. Debnath's opinion, and to consider the inconsistencies between Dr. Debnath's opinion and the evidence from the other medical sources of record.  (*Id.* at 33-36).

Plaintiff argues that the ALJ engaged in a "selective reading" of Dr. Debnath's treatment records, including by pointing to treatment notes prior to the alleged onset date in which Plaintiff had a full range of motion.  (Dkt. 10 at 14).  However, the ALJ did not, as Plaintiff seems to suggest, ignore subsequent treatment notes in which Dr. Debnath observed tenderness and a limited range of motion.  (*See id.* ("Starting on December 17,

2018, Dr. Debnath began to noted [sic] Plaintiff had limited range of motion of the neck. . . .   After this date, Dr. Debnath consistently noted limited range of motion in the neck and tenderness[.]")).   The ALJ acknowledged and cited to these findings by Dr. Debnath, but ultimately concluded that they were not consistent with the degree of restrictions set forth in his opinion.  (Dkt. 4 at 34).   As the ALJ explained, within the relevant time frame, Dr. Debnath observed normal muscle strength and normal gait.  (*See, e.g., id.* at 372 (March 18, 2019, physical examination by Dr. Debnath showing normal muscle strength and normal gait), 375 (December 17, 2018, physical examination by Dr. Debnath showing normal muscle strength and normal gait)).   The ALJ was within his discretion to conclude that these treatment records were inconsistent with the extreme standing, sitting, and walking limitations set forth in Dr. Debnath's opinion.  (*See id.* at 839 (Dr. Debnath opining that Plaintiff could sit and stand for only 45 minutes in an eight-hour workday and could walk for only 20 minutes in an eight-hour workday)).   The Court does not find that the ALJ impermissibly considered only the parts of Dr. Debnath's treatment records that were not supportive of Plaintiff's claim.  *Cf. Andrew B. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1591 (WBC), 2022 WL 1423257, at *3 (W.D.N.Y. May 5, 2022) ("[A]lthough an ALJ is entitled to resolve conflicts in the record, his discretion is not so wide as to permit him to pick and choose only evidence that supports a particular conclusion.").

Plaintiff next contends that the ALJ "failed to properly conduct a consistency evaluation of Dr. Debnath's opinion."  (Dkt. 10 at 14).  The Court disagrees.  Contrary to Plaintiff's assertion that the ALJ "failed to discuss the findings of consultative examiner

Dr. Jenouri" (*id*. at 16), the ALJ expressly did so.  Specifically, the ALJ explained that "Dr. Jenouri noted that the claimant had reduced range of motion of the hips, but her gait was normal, stance was normal, and no assistive devices were used," and concluded that "[t]hese findings support the standing and walking abilities outlined above, and undermine the restrictions provided by Dr. Debnath."  (Dkt. 4 at 35).  Plaintiff is thus simply incorrect in asserting that "[t]he ALJ did not mention any of Dr. Jenouri's findings or his opinion anywhere in the decision."  (Dkt. 10 at 16-17).[2]

The ALJ also, in considering the consistency of Dr. Debnath's opinion with the medical evidence of record, expressly considered the findings of orthopedic surgeon Dr. Warren Wulff, as well as those of Plaintiff's other orthopedic treatment providers, pain management treatment providers, and mental health treatment providers.  (*See, e.g.,* Dkt. 4 at 34-35 ("Physical examinations support the conclusion that the claimant could perform sedentary work, and undermine the significant restrictions identified by Dr. Debnath.  For instance, orthopedic records from January 2019 indicated that the claimant's head was held in neutral position, range of motion of the cervical spine was mildly limited, mild tenderness was present along the cervical spine, motor strength was 5/5 in the upper extremities, sensation was diminished in the finger, +2 deep tendon reflexes in the upper extremities, Spurling's test was negative, and Hoffman sign was negative bilaterally. . . . Pain management records indicated that she had full strength in the upper extremities and full grip strength. . . . ")).  The Court accordingly is not persuaded by Plaintiff's contention

---

[2]     Dr. Jenouri opined that Plaintiff had "mild restriction" in "walking and standing long periods, bending, stair climbing, lifting, and carrying."  (Dkt. 4 at 469).  The ALJ's RFC finding is fully consistent with these restrictions.

- 10 -

that "the ALJ made no articulation on how he considered Dr. Debnath's opinion as to consistency with the other medical evidence." (Dkt. 10 at 15).

Nor is the Court persuaded by Plaintiff's argument that "[h]ad the ALJ conducted a proper evaluation, he would have found the medical evidence is highly consistent with Dr. Debnath's opinion." (*Id*. at 16). While Plaintiff points to evidence of record that she claims supports Dr. Debnath's conclusions, "whether there is substantial evidence supporting [Plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013). Here, the ALJ amply supported his conclusions regarding Dr. Debnath's opinion, and there is no basis for this Court to disturb them.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        November 18, 2022
              Rochester, New York

- 11 -